**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. LORETTA MANUEL, | ) | |
| | ) | |
| Plaintiffs, | ) | CIV-15- |
| v. | ) | |
| | ) | |
| 1. SHATTUCK HOSPITAL | ) | |
| AUTHORITY d/b/a NEWMAN | ) | |
| MEMORIAL HOSPITAL, Inc., | ) | |
| 2. TOWN OF SHATTUCK, | ) | |
| 3. JEFF SHELTON, in his official | ) | |
| and individual capacity as | ) | |
| Administrator of Shattuck Hospital | ) | |
| Authority d/b/a Newman Memorial | ) | |
| Hospital, and | ) | |
| 4. DR. BRENDA HUENERGARDT, | ) | |
| in her official and individual capacity | ) | |
| as a Physician and Board Member for | ) | |
| Shattuck Hospital Authority d/b/a | ) | |
| Newman Memorial Hospital, | ) | |
| | ) | **ATTORNEYS LIEN CLAIMED** |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

**COMPLAINT**

**COMES NOW** the Plaintiff, Loretta Manuel, and for her Complaint against the above-named Defendants, herein alleges and states as follows:

**PARTIES**

1.  The Plaintiff is Loretta Manuel, an adult female currently residing in Brazos County, Texas.

2.  The Defendants are:

    a)  Shattuck Hospital Authority d/b/a Newman Memorial Hospital

1

(hereinafter referred to as "Hospital"), a governmental entity doing business in Ellis County, Oklahoma;

   b)  Town of Shattuck, a governmental entity doing business in Ellis County, Oklahoma;

   c)  Jeff Shelton, in his official and individual capacity as Hospital Administrator at Defendant Hospital; and

   d)  Dr. Brenda Huenergardt, in her official and individual capacity as a Physician and Board Member at Defendant Hospital.

## JURISDICTION AND VENUE

3.  This is a cause of action arising out of Plaintiff's former employment with Defendant entities. Plaintiff asserts claims based on: (a) violation of Plaintiff's Right to Free Speech protected by the First Amendment and made actionable by 42 U.S.C. § 1983; (b) violation of Plaintiff's right to substantive due process protected by the Fourteenth Amendment and made actionable by 42 U.S.C. § 1983; (c) breach of contract; (d) failure to pay wages; (e) unlawful interference with contract; (f) unlawful interference with prospective economic advantage; (g) blacklisting; and (h) abuse of process. Plaintiff's constitutional injuries were caused by state actors.

4.  Jurisdiction over the federal claims is vested in this Court under 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1332 (diversity). Plaintiff's corresponding state law claims arise out of the same core of operative facts and jurisdiction over such claims is vested

in this Court under 28 U.S.C. § 1367.

5. All of the claims arose in and around Ellis County, and the Defendants are/were at all related times hereto located and/or doing business in such county and may be served in that county. Ellis County is located within the Western District of the United States District Court of Oklahoma, wherefore venue is proper in this Court under 28 U.S.C. §1391(b).

6. To the extent required, Plaintiff timely submitted governmental tort claim notices on or about April 3, 2015. Ninety (90) days have passed since such notices were served on Defendants, and, therefore, such notices have been deemed denied. Plaintiff has timely filed this Complaint within one hundred eighty (180) days from the date the tort claims were deemed denied.

## STATEMENT OF FACTS

7. The claims addressed herein relate to and arise out of Plaintiff's former employment relationship with and termination from Newman Memorial Hospital ("Hospital"), which is operated by the Shattuck Hospital Authority, a public governmental trust ("Authority").

8. The sole beneficiary of the trust is the Town of Shattuck, Oklahoma ("Town"). The Town Council appointed the original Trustees of the Authority and also selects replacement Trustees as needed. And, debt obligations incurred by the Authority trust must be approved by two-thirds vote of the Town Council.

9.      Manuel is a Certified Registered Nurse Anesthetist ("CRNA") who has been licensed to work in several states for over thirty (30) years. During this time, her work performance has been exemplary.

10.     On or about December 21, 2013, Manuel was hired to work at the Hospital as a CRNA. Manuel entered into a thirty-six (36) month contract to exclusively provide CRNA services to Newman Memorial Hospital. In this role, Manuel reported to CEO Jeff Shelton.

11.     Upon arriving at the Hospital, Manuel discovered patient care procedures and practices which caused her grave concern for the safety and well-being of the Hospital's patients. For instance, Manuel was frequently called upon to perform basic medical procedures which were outside the scope of her role as a CRNA because other Hospital staff were incapable of performing such tasks. Such procedures included, but were not limited to, inserting IVs and hanging blood for patients.

12.     It was further apparent that medical staff were not following nationally recognized standards of care. For instance, emergency room physicians did not follow Advanced Cardiac Life Support ("ACLS") practices when administering life support to patients. ACLS is a protocol wherein the type of life support and medication administered to the patient are based on the cause of cardiac arrest. As a result, some emergency patients at the Hospital were not resuscitated by emergency room personnel and died.

13.     Manuel began reporting her concerns about patient care to Defendant Shelton in or around February 2014. Shelton told Manuel that he would look into her concerns, but

no progress in making changes was accomplished.

14.     Manuel also discussed her concerns with Defendant Huenergardt, who is a general surgeon for the Hospital.  Huenergardt told Manuel she would discuss Manuel's concerns with Shelton.  However, Huenergardt did not follow up with Manuel thereafter to offer any resolution to her concerns.

15.     On one occasion, Manuel reported to Shelton that, while examining a newborn baby, Manuel discovered a live wasp wrapped in the baby's hospital-issued blanket.  The blanket had just been retrieved from a storage area that was supposed to contain freshly laundered blankets.  When she reported this to him, Shelton told Manuel that he was aware of the wasp problem before her report and that the wasps were all over the facility.  However, Shelton did not indicate he would take steps to fix the issue.  And, had the newborn baby been stung by a wasp, the baby would have suffered a serious, if not fatal, injury.

16.     Due to her growing concerns and the lack of corrective actions being taken, Manuel reported her concerns to the Oklahoma State Department of Health ("OSDH").

17.     Thereafter, in or around March 2014, the Hospital was surveyed by the OSDH, as required by the Centers for Medicare and Medicaid ("CMS").  The Hospital was given a list of deficiencies that had to be resolved prior to a revisit from OSDH.

18.     Later, Manuel attended a meeting to discuss the deficiencies noted by the OSDH related to documentation, policies and procedures.  However, it was apparent that Shelton had no plans to actually remedy many of the issues.  For instance, one deficiency

related to the humidity in the operating room in that it did not meet OSDH standards. During the meeting, the maintenance superintendent told Shelton that he could "rig" the instrumentation so that when OSDH did its revisit, the readings would be within the correct parameters, even if the humidity was not actually meeting OSDH standards.

19.     The maintenance superintendent also stated that the Hospital was lucky the OSDH inspectors did not find the asbestos in the facility, and that they needed to make sure the OSDH inspector did not visit such areas in the future.

20.     At this same meeting, Shelton directed Manuel to standardize and revamp the "crash" carts in all departments. A "crash" cart is a set of trays or drawers on wheels used to transport and dispense emergency medication and equipment for life support protocols to potentially save a patient's life. Although this was not within the scope of her duties, Manuel performed the task. In doing so, she discovered the "crash" carts had clearly not been checked or properly stocked for over a year. Four (4) of the carts contained laryngoscopes (used to visualize the airway of a patient who had stopped breathing) that had corrosion on them due to exploded batteries. This could lead to the death of a patient if medical staff attempted to use the scope or could not locate a functioning scope.

21.     Based on this and Manuel's discovery of other conditions that put patients in serious (and potentially fatal) risk, Manuel again contacted the OSDH. Her report included, but was not limited to, the humidity issue, the wasp infestation, the presence of asbestos, the crash cart deficiencies, and the Hospital's efforts to cover up these issues.

22. Thereafter, Hospital personnel questioned Manuel as to her knowledge of who reported such issues to OSDH. Based on the frequency of their questions and demeanor, it became apparent that Defendants suspected Manuel was involved in the report to OSDH. Upon information and belief, the individual Defendants were aware of Manuel's report to OSDH and sent personnel to confirm that she reported these issues. And, Manuel did not deny to anyone that she contacted OSDH.

23. About three (3) weeks after her call to OSDH, on or about April 7, 2014, Manuel was fired during a meeting with Defendant Shelton, Defendant Huenergardt and Dr. Danna Stuart. Shelton accused Manuel of using drugs and stated "they" had been worried about her for the last two weeks due to alleged reports that Manuel's behavior outside of the workplace was erratic. Manuel stated she was unaware of any such reports and denied the accusations.

24. Manuel immediately requested a drug test which Shelton denied.

25. Shelton also accused Manuel of not personally completing policies and procedures for the OSDH/CMS audit as he had requested. However, Manuel personally submitted policies and procedures to Shelton, and reminded him of this.

26. Shelton then gave Manuel a piece of paper and told her to admit in writing that she was on drugs. Manuel refused. Shelton said Manuel had used "two strikes" and would only be given one more chance to admit she was using drugs. Manuel again refused to admit to something that was not true and pointed out that she and Huenergardt worked together for

over three (3) months, and Huenergardt knew Manuel was not using drugs.

27. Shelton began yelling at Manuel, demanding that she write down which drugs she had taken. Shelton threatened Manuel, stating that if she did not do as he demanded, he would not let her leave the Hospital, he would call the police to arrest her, and Manuel would lose her nursing license. Huenergardt then directed Manuel to write it as Shelton said.

28. Under the extreme duress of these accusations and the threat of criminal action and loss of her nursing license, Manuel wrote a statement indicating she had been accused of taking drugs. Manuel did not sign the statement.

29. Shelton then took Manuel's pager and keys. Shelton told Manuel she could not leave the Hospital until another CRNA arrived to relieve her or he would report her for medical abandonment of her patients. Manuel asked what would happen if she was needed in the operating room, and Shelton responded he would accompany her into the operating room, if necessary.

30. Manuel further asked that a final medication count be performed before she left the Hospital, but Shelton refused.

31. Manuel was finally permitted to leave the Hospital hours later.

32. Manuel was not fired for the proffered reasons, but in retaliation for her reports of unsafe conditions made both internally and to OSDH, which were made out of concern for the safety of her patients and outside the scope of her job duties. Her termination was also in breach of her employment contract with the Hospital.

33. Following her termination, Defendants made false statements to third parties that have rendered Manuel unable to find a position as a CRNA. For instance, the Hospital and/or its representatives made a false report about Manuel to the Oklahoma Board of Nursing in or around April 2014. However, Manuel has not been disciplined by the Board.

34. Moreover, Defendants made a false report to the National Practitioner Data Bank (which reflects complaints made against medical providers across the country and is routinely checked by employers). Defendants' report falsely states that Manuel's clinical privileges at the Hospital were revoked for various criminal acts, including but not limited to the pilfering and diversion of controlled substances.

35. As a result of Defendants' false report to the National Practitioner Data Bank, Manuel has been unable to gain subsequent employment as a CRNA, resulting in a significant loss in income.

36. Defendants falsely reported to the Oklahoma State Bureau of Narcotics that Manuel stole medication while she was employed at the Hospital. However, such allegations were false and no criminal charges were filed.

37. In her almost thirty (30) year career as a CRNA, Manuel has not previously been accused or reported to a state licensing board for drug use or medication discrepancies.

38. Moreover, Manuel has not been paid for approximately eight (8) days of work, in the amount of $7,562.51, although she has requested payment for such work on multiple occasions.

39. As a direct and proximate result of Defendants' actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - First Amendment Violation

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

40. This count goes against all Defendants.

41. Defendants were acting under the color of their authority in a manner which deprived Plaintiff of her constitutional right to the freedom of speech. Particularly, Plaintiff made statements as a private citizen which were a matter of public concern, including but not limited to the abhorrent conditions of the Hospital and its clinical practices. Plaintiff was retaliated against following such speech.

42. Plaintiff's First Amendment right to the freedom of speech was clearly established at the time of the actions in question. The actions of Defendants were in deliberate indifference to the constitutional rights of Plaintiff. Therefore, the Defendants are liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

43. Such actions have caused lost earnings and a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

44. To the extent that the actions of any individual are deemed willful, wanton, deliberately indifferent or in reckless disregard to Plaintiff's rights, then punitive damages are available and should be assessed against each such person.

## COUNT II - Due Process

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

45. This Count goes against all Defendants.

46. Defendants were acting under the color of their authority in a manner which deprived Plaintiff of her constitutional right to substantive due process in that Plaintiff had a fundamental liberty interest in continued public employment. Such actions are in violation of Plaintiff's Fourteenth Amendment right which was clearly established at the time of the actions in question and, therefore, Defendants are liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

47. The actions listed above represent a violation of Plaintiff's rights under the Fourteenth Amendment, *inter alia*, which have caused a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

48. To the extent that the actions of any individual are deemed willful, wanton, deliberately indifferent or in reckless disregard to Plaintiff's rights, then punitive damages are available and should be assessed against each such person.

## COUNT III - Failure to Pay Wages

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

49. This Count goes against Defendants Hospital and Town.

50. The acts described above constitute violations of the Fair Labor Standards Act for failure to pay wages. Specifically, Defendants Hospital and Town did not compensate Plaintiff for approximately eight (8) days of work.

51. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff suffered a loss of income and other damages. As such, Plaintiff is entitled to recover lost wages, liquidated damages, attorneys' fees and costs incurred in connection with this claim.

52. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA. Defendants knew, or showed reckless disregard for the fact that their compensation practices were in violation of these laws.

### **COUNT IV - Breach of Contract**

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

53. This Count goes against Defendants Hospital, Town and Shelton.

54. Effective on or about December 12, 2013, Manuel and Defendants entered into a contract wherein Manual would provide CRNA services to the Hospital.

55. The contract provides for Manuel to perform CRNA services "twenty four (24) hours per day, seven (7) days a week, throughout the calendar year." The contract further states Manuel's compensation was "based on a twenty-four (24) hour period and all inclusive at One Thousand Dollars ($1,000.00)," in other words $1,000 per day for 365 days per year, or $365,000 per year. The term of the contract was thirty-six (36) months with automatic

renewal on an annual basis unless either party gave a written notice of contract termination at least one hundred and twenty (120) days prior to the termination of any period (in the contract).

56. The contract provided for the following scenarios in which the contract could be terminated:

    a) Upon 120 days written notice prior to the termination of thirty-six month term.
    b) Upon 120 days notice of a material breach by either party.
    c) Conduct by Manuel jeopardizing the health, safety, or welfare of any persons, or the safety, reputation, or regular function of the Hospital.
    d) Loss of clinical privilege or professional license.

57. None of these events occurred before Defendants unilaterally terminated the contract on or about April 7, 2014.

58. Moreover, Defendants did not compensate Manuel for approximately eight (8) days of work performed prior to the termination of the contract, in the amount of $7,562.51.

59. Therefore, Defendants are in breach of the contract.

60. Manuel has suffered damages as a result of Defendants' breach.

61. As damages, Manuel seeks all remedies available under Oklahoma state law, including but not limited to payment for work performed, payment for the entirety of the contract term, incidental and consequential damages, special damages, and attorney's fees and costs.

### COUNT V- Tortious Interference

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

62.     This Count goes against the individual Defendants.

63.     The acts above-described constitute unlawful interference with a contractual/ employment relationship. Defendants' actions were malicious and caused an actual harm to Plaintiff's employment relationship with Defendants Hospital and Town. Defendants had no justification, excuse, or privilege for such interference.

64.     As a result, Plaintiff is entitled to all damages allowed by state law.

### COUNT VI - Interference with Prospective Economic Advantage

For her sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

65.     This count goes against the individual Defendants.

66.     The acts above-described constitute unlawful interference with Plaintiff's prospective economic advantage.

67.     Plaintiff had a reasonable expectation for profit, i.e., continued contract for services with Defendants Hospital and Town.

68.     Defendants had knowledge of this relationship and/or expectancy.

69.     Defendants intentionally induced or caused a breach or termination of Plaintiff's relationship or expectancy.

70.     Such breach resulted in damage to Plaintiff.

71.     As a result, Plaintiff is entitled to all damages allowed by state law.

### COUNT VII - Blacklisting

For her seventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

72.     This count goes against all Defendants.

73.     The acts of Defendants described above constitute blacklisting in violation of 40 O.S. § 172.  Particularly, the actions of Defendants, including but not limited to the false and unjustified report to the National Data Bank of Practitioners, Oklahoma Nursing Board and Oklahoma Bureau of Narcotics, were intentionally taken in an effort to prevent Plaintiff from obtaining subsequent employment.

74.     As damages, Plaintiff is entitled to all damages allowed by state law.

### COUNT VIII - Abuse of Process

For her eighth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

75.     The count goes against all Defendants.

76.     The acts described above constitute the tort of abuse of process.

77.     The Defendants improperly used an administrative or judicial process primarily for an ulterior or improper purpose with the resulting damage to Plaintiff.  Particularly, Defendants falsely reported to the National Practitioners Data Bank, Oklahoma Board of Nursing, and Oklahoma State Bureau of Narcotics that Plaintiff unlawfully obtained

prescription medication and used such medication while she worked for the Hospital and Town. Such reports were made with the intent to prevent Plaintiff from obtaining employment. And, Plaintiff has not found other employment as a result.

78.  As damages, Plaintiff is entitled to all damages allowed by state law.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendants and assess actual, compensatory, punitive damages, and together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 5th DAY OF OCTOBER, 2015.**

> s/Jana B. Leonard
> JANA B. LEONARD, OBA# 17844
> LAUREN W. JOHNSTON OBA# 22341
> LEONARD & ASSOCIATES, P.L.L.C.
> 8265 S. WALKER
> OKLAHOMA CITY, OK 73139
> (405) 239-3800    (telephone)
> (405) 239-3801    (facsimile)
> leonardjb@leonardlaw.net
> johnstonlw@leonardlaw.net
>
> JURY TRIAL DEMANDED
> ATTORNEY LIEN CLAIMED